IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TRACY CHARLES MINNEY                                                    PLAINTIFF

       v.                              Civil No. 11-2110

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tracy Minney, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his applications for DIB and SSI on February 18, 2009, alleging an amended onset date of February 18, 2009, due to seizures, memory loss, a history of lumbago, bilateral carpal tunnel syndrome, and depression. Tr. 9, 26-27, 101-109, 131, 154. His applications were denied initially and on reconsideration. Tr. 39-48, 51-54.

An administrative hearing was held on February 18, 2010. Tr. 19-38. Plaintiff was present and represented by counsel. At this time, plaintiff was 44 years of age and possessed a high school education. Tr. 23, 24, 135. He had past relevant work ("PRW") experience as a truck driver. Tr. 24, 26, 132, 135, 138-145, 186, 191.

On October 16, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's seizures with accompanying memory loss, history of lumbago, and bilateral carpal tunnel syndrome did not meet or medically equal one of the listed impairments in 20 C. F. R., Part 404, Subpart P, Appendix 1. Tr. 11-12. He then determined Plaintiff retained the residual functional capacity ("RFC") to perform light work requiring only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing ladders, ropes of scaffolds. Tr. 12-14. Further, the ALJ found Plaintiff could not perform tasks requiring the rapid and repetitive flexion and extension of his wrists, work near hazards (unprotected heights or heavy machinery), or drive. He also determined that Plaintiff was able to understand, remember, and carry out simple, routine, and repetitive tasks and could respond appropriately to supervision, co-workers, the general public, and usual work situations. With the assistance of a vocational expert, the ALJ concluded that Plaintiff could perform work as a cashier II, sales attendant clerk, and housekeeper. Tr. 14-15.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 6, 2011. Tr. 1-3. Subsequently, plaintiff filed this action. Doc. # 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 5, 6.

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U. S. 212, 219-220 (2002).

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

3

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Evidence Presented:

In December 2002, Plaintiff presented in the emergency room after experiencing a grand mal seizure that lasted seven to eight minutes. Tr. 218-219. Upon presentation, he still felt dizzy, but denied any injury or loss of bladder/bowel function. Plaintiff was administered Dilantin and Tylenol. He was then discharged into the care of a friend and advised not to drive. Tr. 218-219.

In July 2006, Plaintiff reported experiencing no seizures since beginning Carbatrol several years prior. Tr. 230, 232. He had experienced three headaches since his last visit, but indicated that they were relived with Ibuprofen. Tr. 230, 232.

In September 2006, Plaintiff was again treated for headaches. Tr. 225-228. Dr. Rick Olson, a neurologist, evaluated Plaintiff. He noted that Plaintiff had been diagnosed with migraine headaches and prescribed Imitrex, which seemed to help. A recent MRI of Plaintiff's brain revealed sinusitis involving the ethmoid sinuses bilaterally and cerebral spinal fluid ("CSF") fluid collection in the posterior fossa which resulted in a mild mass effect on the cerebellar vermis and cerebellar hemispheres that could represent a prominent cisterna magna or an arachnoid cyst. Tr. 214-215. Similarly, a CT scan revealed a prominent retrocerebellar

CSF density collection within the posterior fossa midline likely representing a prominent cisterna magna and chronic inflammatory changes in Plaintiff's sinuses. Tr. 216-217. Dr. Olson conducted a thorough examination, which revealed an appropriate affect and no impairment of attention, concentration, long-term memory, or short-term memory. Tr. 227. No neurological abnormalities were noted, but Plaintiff did have lumbar lordosis. Dr. Olson assessed Plaintiff with nonspecific abnormal findings on radiological and other examination of the skull and head, sinusitis, and an enlarged cisterna magna. However, he did not believe Plaintiff's headaches were related to these findings. Dr. Olson's final diagnosis was migraine headaches without mention of intractable migraine, something he believed was congenital. Tr. 227.

On February 2, 2007, Plaintiff returned for a check-up with Dr. Cowan. Tr. 222. He was doing well and denied any recent seizures. Although he had previously experienced some problems with his sinuses, they were reportedly under control at this time. Tr. 223-224. Plaintiff complained only of nocturnal restless legs. He was using topical cream and Flexeril for relief. Tr. 222.

In April 2007, Plaintiff's seizure disorder was noted to be stable, as he reported no recent seizures. Tr. 221. Plaintiff was prescribed Zoloft to treat his anxiety and Chantix to help him stop smoking. Dr. Cowan diagnosed him with pre-hypertension. Tr. 221.

In September 2007, Plaintiff complained of restless legs and arms and insomnia. Tr. 220. He had experienced no seizures and continued to be tobacco free. Plaintiff indicated that he had taken his wife's dosage of Zoloft, which was higher than his, and this seemed to help him more. He also reported more energy and the ability to breath better since quitting smoking. Dr. Cowan prescribed Requip for a diagnosis of restless leg syndrome. Tr. 220.

5

On February 21, 2008, Plaintiff underwent a pre-employment physical exam with Nurse Carmen Oxford at Twin Cities Medical Clinic. Tr. 211-213. She noted that he suffered from anxiety, for which Zoloft had been prescribed, and that he was experiencing muscular lower back pain for which he took Flexeril at night. Nurse Oxford then concluded that Plaintiff had no limitations that would prevent him from continuing to drive a truck. Tr. 211-213.

On April 4, 2008, Plaintiff complained of intermittent back pain, numbness in his hands, and pain in his elbows. Nurse Oxford noted that Plaintiff exhibited decreased monofilament sensation bilaterally in his hands. She diagnosed Plaintiff with intermittent back pain, paresthesia of the upper extremities, and a history of seizures. Nurse Oxford refilled his prescriptions for Flexeril and Carbatrol, increased his Requip dosage, and ordered nerve conduction studies. Tr. 210.

On March 6, 2009, Plaintiff completed a seizure statement. Tr. 146-147. He reported experiencing grand mal seizures with loss of memory and disorientation. Following a seizure, Plaintiff stated that he felt very sore and tired. He indicated that his last seizure had occurred on February 18, with another one having occurred on December 2. Plaintiff stated that he took Carbatrol to treat his seizures, having last seen his doctor on February 8. Tr. 146-147.

This same date, Lisa Rozita Keiser, Plaintiff's ex-wife, completed a seizure statement. Tr. 150-151. She reported witnessing one seizure in 1993. Ms. Keiser indicated that Plaintiff felt extremely tired just before experiencing the seizure, and then began seizing. She stated that medication kept the seizures under "better control," when he took his medication as prescribed. Tr. 150-151.

On March 7, 2009, Edsel Lee Minney completed a seizure statement on Plaintiff's behalf. Tr. 148-149. Mr. Minney stated that he had witnessed Plaintiff experiencing a seizure in 1989. Tr. 148-149.

This same date, Mike Schwartz completed a seizure statement. Tr. 152-153. He had witnessed Plaintiff's seizure in December 2002. Mike indicated that Plaintiff became limp and slumped out of his chair just before beginning to seize. He stated that he called 911 and they told him to "let it run it's course." Plaintiff was then transported to the hospital. Tr. 152-153.

Plaintiff attempted to obtain a seizure statement from his treating doctor, but the doctor refused to complete it because Plaintiff owed him money. Tr .192.

On May 12, 2009, Plaintiff returned to Twin Cities Clinic for a follow-up. Tr. 237. He was doing well on Carbatrol, but reported some dizziness. Plaintiff had experienced this in the past and now wanted to have it evaluated and potentially treated. Nurse Oxford prescribed Zoloft and advised Plaintiff to return for further evaluation in two weeks. Tr. 237.

This same date, Nurse Oxford completed a medical source statement. Tr. 208-209. She indicated that Plaintiff would have poor or no ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; understand and remember very short and simple instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and, set realistic goals or make plans independently of others. Nurse Oxford also opined that he had only a fair ability to carry out

7

very short and simple instructions; perform activities without a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, be aware of normal hazards and take appropriate precautions. Tr. 208-209.

On June 11, 2009, Plaintiff had recently been switched to generic Tegretol and was doing well. Tr. 236. However, he had experienced an episode in Wal-mart where he felt like he was going to have a seizure, but never actually did. Upon further investigation, Plaintiff admitted that he probably had not taken his anti-seizure medication on the morning of the event. Therefore, Nurse Oxford kept him on his current medications and dosages and advised him to use his pill organizer to help him remember his medications. She also stressed the need for him to see a neurologist, but Plaintiff refused as he did not have the money for the examination. Nurse Oxford encouraged him to look into the Medicaid spend-down and he agreed. Tr. 236.

On August 21, 2009, Plaintiff indicated that he had experienced a seizure a few days earlier, while shopping at the mall. Tr. 233-234. He ended up in a section of the mall that he had no recollection of going to and could not locate his family or their vehicle. Although this was not a grand mal seizure, when Plaintiff came to, he was sitting on a bench outside of the mall with no recollection of how he had gotten there. He did admit, however, that he had missed his seizure medication that morning. Nurse Oxford ordered an MRI of his brain and encouraged him to accept a neurology referral. Plaintiff indicated that he was having a difficult time being

unemployed, as he had always been the breadwinner and now felt that he was letting his family down. He had not started the Zoloft, as Nurse Oxford had recommended at his last few visits, mostly due to financial reasons. Because he was also experiencing some anger outbursts, Nurse Oxford prescribed Paxil. Due to his memory problems, she also recommended changes in the timing of his medications, indicating that Namenda or Aricept would be considered if his MRI came back negative. Tr. 233-234.

On July 22, 2010, Plaintiff was doing fairly well on his anti-seizure medication. Tr. 240. He had experienced a grand mal seizure on Father's Day, during which he lost consciousness. Plaintiff had recently been turned down for disability and was requesting additional assistance in appealing his claim. Nurse Oxford increased his Prozac dosage, prescribed Xanax for short-term anxiety issues, and ordered blood work to evaluate his Tegretol levels. She also referred him to University of Arkansas Medical Science for a neurological evaluation. Her notations on the lab results indicate that his blood work was "ok." Tr. 241.

## IV. Discussion:

Plaintiff contends that the ALJ erred by concluding that he was not totally credible, dismissing the assessment prepared by Twin City Medical Clinic, and overstating his RFC. Because we are required to review the entire record to determine whether substantial evidence supports the ALJ's decision, we will begin our analysis with a review of Plaintiff's credibility and subjective complaints. *Cox*, 495 F.3d at 617.

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in

evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that Plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that Plaintiff was first diagnosed with seizure disorder and accompanying memory loss in the 1980's and was prescribed Carbatrol to treat this condition. On several occasions, both Plaintiff and his doctors noted that his seizure disorder was under control. Tr. 221, 222, 236, 237. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Aside from an enlarged cisterna magna and sinus issues, a CT scan and MRI of Plaintiff's brain revealed no

abnormalities and neurological exams were also essentially unremarkable. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Although Plaintiff contends that he suffered six seizures over the previous year, the medical evidence does not support his statement. In fact, during the relevant time period, Plaintiff reported experiencing only three seizures, and twice admitted that he had forgotten to take his medication on the morning of the seizure. Tr. 233-234, 236. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). On each occasion, Nurse Oxford made no changes to Plaintiff's medication dosage, rather recommended that he use a pill box and change the timing of his medication to prevent missed doses. Tr. 233-234, 236. She also referred him for a neurological examination. There is, however, no indication Plaintiff was ever examined by the neurologist as recommended. *Id*.

Plaintiff contends that he also suffers from lumbago and carpal tunnel syndrome, however, we can find no indication that Plaintiff sought out treatment for these complaints during the relevant time period. Plaintiff was last treated for both of these impairments in April 2008. Tr. 210. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing). Thus, while we agree that these impairments are severe, because they did not necessitate regular treatment, we can not say that they are disabling.

The record does indicate that Plaintiff had a history of treatment for anxiety. He was prescribed Zoloft in April 2007 and again in May 2009. Tr. 221, 237. However, in August 2009,

11

Nurse Oxford noted that Plaintiff had not yet filled the prescription. Tr. 233-234. Due to some recent anger outbursts, she then prescribed Paxil. Tr. 233-234. It is clear that Plaintiff did not seek out consistent treatment for his anxiety/depression/anger issues and received only conservative treatment from his general doctor. Plaintiff did not seek out treatment from a mental health professional. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (holding that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). Accordingly, the evidence does not indicate that Plaintiff's depression/anxiety was severe.

Plaintiff seeks to excuse his failure to obtain consistent medical treatment, stating that he did not have the funds to pay for treatment. The ALJ noted that Plaintiff did not seek out consistent treatment, even when he was working full-time as a truck driver. Further, he produced no evidence to indicate that he had been denied medical treatment due to his finances and failed to show he sought out the low cost and/or no cost medical treatment that is available to indigent individuals. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty). As such, his failure to seek out treatment can not be excused. Therefore, we find that the evidence as a whole supports the ALJ's conclusion that Plaintiff's complaints of disability were not totally credible. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).

Plaintiff's reported activities also undermine his claim for disability. On an adult function report dated March 6, 2009, Plaintiff reported the ability to care for his wife and children; care for dogs, cats, chickens, and donkeys; care for his personal hygiene; prepare a

variety of meals; help with the housework; go outside daily; ride in a car; drive rarely; shop for groceries in stores every two weeks; pay bills; count change; handle a savings account; use a checkbook/money orders; garden; and, watch television. Tr. 156-163. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities do not support Plaintiff's claim of disability.

The ALJ also properly considered the written statements of Plaintiff's family and friends who allegedly witnessed seizures prior to the relevant time period. We note that each witness reported witnessing only one seizure. So, although their statements corroborate Plaintiff's contention that he suffered seizures on the dates in question, they do not support his allegations regarding the frequency of his seizures during the relevant time period. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers from some degree of impairment, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not

13

support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's determination that Plaintiff had the RFC to perform a range of light work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding his daily activities, and the functional limitations set forth by the physicians. On March 24, 2009, Dr. Jim Takach completed a physical RFC assessment. Tr. 196-203. After reviewing Plaintiff's medical records, he concluded Plaintiff could perform light work that did not require rapid and repetitive flexion and extension of the wrists. Dr. Takach also limited Plaintiff to occasional climbing of ramps and stairs, balancing,

stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; and, no exposure to hazards such as machinery and heights. Tr. 196-203. This was affirmed by Dr. Bill Payne on April 23, 2009. Tr. 206.

We are also cognizant of Nurse Oxford's May 2009 assessment, basically concluding that Plaintiff was disabled. However, a review of the entire record reveals that this assessment is not consistent with medical evidence. In fact, her assessment is inconsistent with her own treatment notes and her notes from his February 2008[1] pre-employment physical indicating that Plaintiff had no limitations that would prevent him from continuing to driving a truck. Tr. 211-213. At that time, she concluded that he qualified for a two year certification. Tr. 213. There are no records between the February 2008 and May 2009 assessments to indicate that Plaintiff's condition deteriorated. Further, there are no medical records dated after Nurse Oxford's 2009 assessment to indicate that Plaintiff's condition was as limiting as her assessment assumes. Accordingly, we do not believe her assessment was entitled to significant weight.

After a thorough review of the record, we find substantial evidence supports the ALJ's RFC assessment. It is clear that Plaintiff could perform light work with seizure precautions and limitations related to his carpal tunnel syndrome. The ALJ's conclusion that he could perform only unskilled work is also adequate to take into account his memory limitations.

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work as a cashier II, sales attendant clerk, and housekeeper. The ALJ asked the VE a hypothetical question that mirrored his RFC finding. In response, the VE stated that Plaintiff

---

[1] We note that this assessment was signed by Dr. Aaron White, Nurse Oxford's supervising doctor. Tr. 213.

15

could perform these positions. Tr. 35-36. The ALJ relied upon this testimony to conclude that there were other jobs that Plaintiff could perform and that he was, therefore, not disabled. Tr. 79-80.

The hypothetical question posed to the vocational expert need only include those impairments and limitations found credible by the ALJ." *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). The hypothetical question in this case incorporated each of the impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented. Accordingly, we find substantial evidence to support his finding that Plaintiff could perform work that exists in significant numbers in the national economy.

### V.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of May 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)